Good morning, Your Honors, and may it please the Court. I'm Scott Burroughs from Doniger Burroughs on behalf of the Plaintiff and Appellant. I'd like to reserve a few minutes for rebuttal, and I'll keep an eye on the clock to do so. We're here today to address a copyright infringement case. Beneath the pages of briefing on the interpretation of 411A and the different iterations of the compendium and the different CFRs that may or may not apply, there is strong evidence in this case that my client, the copyright holder, owned the artwork at issue, that its client, Sanctuary, with whom it had a business relationship, obtained that artwork and then sent it overseas to be copied. In the paper, Sanctuary aversed that it sent that overseas for sourcing, but a comparison of the artwork shows that it's clear copying. But we never even got to that issue at the district court because the district court allowed Sanctuary to evade liability by exploiting a loophole that Congress specifically amended the Copyright Act to close. As a matter of fact, the legislative history of the Pro-IP Act at 411, which we brief extensively, the legislative history indicates that, quote, intellectual property thieves were, quote, exploiting a loophole by challenging copyright registrations. And the Congress intended that not to happen, and they revised the Copyright Act for that to be the case. The plain language of the statute, that's what sort of, in order to say that they're exploiting a loophole that was closed by the statute, you have to show that you survived Section 411b-1, and that says that the certificate of registration satisfies the requirement regardless of inaccurate information, which is, I take it undisputed here that there was inaccurate information. That's in dispute, Your Honor, and I'll get to that. Okay. That was included on the application with knowledge that it was inaccurate, and if known, would have caused the register of copyright to refuse registration. So the district court resolved the dispute about whether you knew that it was published or not against your client. And so let's just say for the moment that the district court was right in the resolution of that dispute. Why wasn't it correct then that the certificate wasn't, isn't protected by the safe harbor in 411b-1? Well, 411b, Your Honor, is a conjunctive test. As Your Honor indicated in the L.A. Printext case on which you were on that panel, to invalidate a registration under 411b, the burden, A, rests on the challenging party, and B, requires two things, a showing of scienter, a showing of fraud. It doesn't require that in the statute. I mean, the L.A. Printext test said, recites both 411b and then says that inadvertent mistakes, which is the question, right, whether it was inadvertent or knowing. Inadvertent mistakes don't invalidate a copyright unless the claimant intended to defraud the Copyright Office. So that was the L.A. Printext test, and that related to inadvertent mistakes, whereas 411b references inaccurate information without knowledge. Well, Your Honor, the test is conjunctive. Both are required. And in L.A. Printext, it's written that the copyright holder, there's no evidence, quote, the copyright holder intended to defraud the Copyright Office. So that's one of the fundamental mistakes. But why does that matter if you don't meet the safe harbor in 411b? That's what I don't understand. I mean, the plain language of the statute doesn't say anything about fraud or a requirement of showing an intent to defraud. Right. It requires a knowing inaccuracy or a knowing mistake. Right. And there's no evidence. And that the Copyright Office wouldn't have registered it, and the district court obtained a letter to that effect. Right. And though it doesn't use the word fraud, case law, including in L.A. Printext and in the recent Roberts v. Gordy case of the 11th Circuit, state expressly that the Pro-IP Act, quote, codified the fraud requirement. And Roberts goes into that. But there's nothing in the statute that says that. And we didn't say it codifies it. We just also applied the fraud test. I was there, so I know that. Right. So there's nothing in the statute that says it was codified. You'll see that occasionally in statutes. The statute just says what it says. Why aren't we bound by that? Well, then we're looking at what is a knowing misstatement. A knowing misstatement is not a mistake whereby you know the underlying fact, but you apply it incorrectly. That's one of the fundamental issues with the district court's ruling. Under the reasoning that the district court uses, any mistake on a copyright registration would be outside of the safe harbor because any mistake is going to involve the party knowing the underlying facts and then simply applying the law wrong. For example, in Jules Jordan, the mistaken issue was the copyright was in the wrong party's name. Clearly in that case, the party with the copyright knew which party's name it should have been in. They simply made a mistake in applying the law as to how ownership works under the Copyright Act. So the district court said the Supreme Court cases, with a few very narrow exceptions, like in the tax code, I think, gun cases, with a few very narrow exceptions, the Supreme Court has made clear ignorance of what the law requires doesn't excuse you. And so the district court said you knew that you had sold the 190 yards or whatever it was without stopping resale. The fact that you didn't know that constituted publication is irrelevant. And also cites the compendium, which says it's up to the applicant for registration to know what the copyright law requires. Why was that wrong? There's two problems with that, Your Honor. The first is the compendium cited didn't exist at the time this registration was submitted. The second was that law that the court cites, the Supreme Court law, has never been applied in a copyright case. Why? Because the statute is a subjective test. It's not based on what you knew or should have known. It's what you knew at the time you were sending the application into the Copyright Office. For example, in L.A. Print X, the plaintiff in that case certainly knew that it had sampled the designs or sold the designs prior to the same facts. There was a registration with multiple works. Some were published, some weren't. The plaintiff had that same knowledge in that case, but the Copyright Office said it's not objective, it's subjective. Did they know that sampling that artwork? What should we do with the fact that you later obtained a separate copyright registration for the design as a published work? That supports our position, Your Honor. And going to the materiality question, I understand the response to that, and I'll get to it. The fact that the work was later registered shows that the statement in the application that's challenged was not material. In L.A. Print X, the court found that the fact that the Copyright Office allowed the registration to be amended was enough to show that that work would have been registered. Here, the Copyright Office approving that artwork at that later date establishes that the error in the publication section was not material. But the Copyright Office specifically says it is material. We wouldn't have registered it. Of course, we'd have worked with the applicant to fix the mistake, and if they had given us a chance, we would have done that. But as it stands, it was material. We would not have registered that copyright. So how do we get around that? Well, the Copyright Office didn't specifically say that, Your Honor. What the Copyright Office said is when faced with an error like this, we will reach out to the copyright applicant, and we'll work with them to include the right publication data. They did say all that, but first they said we wouldn't have registered it. Well, no, they said we wouldn't have registered it if they didn't respond in 45 days, Your Honor. What the Copyright Office does, because I've had to deal with this unfortunately many times, is the application will go in. If there's an issue, the Copyright Office will respond to you. And if you don't respond within 45 days, then they'll reject that. But none of that happened because they didn't know there was an error. So the fact is, as the District Court found on the facts, as they existed, the Copyright Office would not have registered it had they known the truth. And that's exactly it, Your Honor. The standard is, if they had known of that fact, would they have registered? And the answer is yes. They didn't know in this case, but if they had known that it had been published, they would have reached out to the applicant, allowed them to fix it. So long as they responded in 45 days, and the Court notes that in its order, so long as they responded in 45 days, they still would have registered the work. And we have to parse the language a little bit because Nimmer identifies this in his treatise at Section 720B1. The question is whether the work would have been registered, not whether that particular application would have been accepted. And to your point, Judge O'Scanlan, the Copyright Office did register the work eventually. So we have proof positive that this work is registrable. And per Nimmer and per the case law, if the work is registrable, that mistake is not material. And going back to the case law, since 2010, we've had four opinions on copyright registration issues. I've been fortunate enough to argue three of those. And we've prevailed in all of them. I don't think because of my oratory skills, or I'd like to think that, but because the law is very clear in the Ninth Circuit. 411 is a conjunctive test requiring both. So even if we find... But you keep saying that, but you're applying words that aren't in the statute. Is that right? You're trying to rely on L.A. Print Text, which did assert a different test. It asserted a fraud test. But those words are not in the statute. I mean, certainly we can say, and if you show that there was an attempt to defraud the Copyright Office, then even if you're now claiming it's an inadvertent mistake, you won't... We won't allow you to go forward. But that doesn't detract from the language in the statute. When I say conjunctive, Your Honor, I mean that 411 has an and. It has to be knowing the statement and material. So even if we assume that the mistake is material, which it isn't for the reasons we've discussed, we still need that scienter. We still need information and evidence establishing it was a knowing statement. And here we don't have that. The entirety of the evidence relied on by the district court is one line from a deposition where the owner of Fiesta Fabrics, who's not a lawyer, says, yes, we had some samples of this design, I now know that. The loop was never closed. There was never any evidence that he said, I think this is publication, or we were trying to do this for some reason that's nefarious. There was no reason. There was no motive. So it's your view that we should read 411B1A with knowledge that it was inaccurate to mean knowledge that the legal... knowledge of the legal standard, that the person who registered it would have to know what the legal standard was in order to have knowledge of inaccuracy. Is that how you would interpret it? Yes, because the text does say, an inaccurate statement included with knowledge that it was inaccurate. To have knowledge that it's inaccurate, you have to know the legal standard. Otherwise, you'd have no basis on which to know that this is not the accurate information. Like specific liability. Subjective intent. Okay, got it. And I'm going to reserve my three minutes. Thank you. All right. Good morning, Your Honors. And may it please the Court, Jessica Rutherford for appellees. At issue here is plaintiff's lack of a right to institute civil action, where the only registration at issue should have never issued for a work that is not entitled to registration pursuant to 411B. As the Post-it Council says, it's a highly technical violation, right? In fact, the Copyright Office says we would have worked with them to correct whatever minor inaccuracy there was in their information. The issue here, however, is that this defect was fatal and could not be corrected except by deleting the 1461 design, the design at issue here. They did, and then they subsequently got it registered, right? Well, if, I mean, plaintiff disputes it. We agree that it was effectively deleted from the 509 registration when plaintiff sought a second, when plaintiff filed a second application and informed the Copyright Office of the true facts. That said, that second registration was never at issue in this case, and so it cannot be relied upon. Plaintiff didn't include it in the pleadings, didn't include it in the Form AO-121, never amended to add it, and unlike in LA Printax, as I say, the only way to correct the first error was to delete it from the 509 registration and file a completely new registration, as opposed to what happened in LA Printax, which was that the applicant was able to file a supplementary registration and delete the works that were improperly registered, thereby leaving the remaining works, including the work at issue, in the properly registered registration. So the Eleventh Circuit would read the fraud on the Copyright Office into 411b-1. Why shouldn't we do that likewise? Well, there's certainly some language in our cases, even after the enactment, the revision of 411b-1, where we're talking about that test. Well, first of all, as Your Honor pointed out, it's not in the statute. The statute does not require proof of knowledge that the Copyright Office would have refused registration. It only requires knowledge that the incorrect information was included in the application here. The test that the Eleventh Circuit has set out has never been the test in any district court in the Ninth Circuit. In fact, there were several district court cases before the one at issue where the court clearly said that this type of inaccuracy, of error, is a fatal defect and renders the entire registration defective, unregisterable. The entire collection, I should say. Even without getting to 411b. And even since the Pro-IP Act was passed, there are several district court cases that are exactly on all fours and say just that. So it's never been the law in the district courts of the Ninth Circuit that this type of, that there's any intent to defraud requirement. But we did apply that test in L.A. Print X. Or we at least recited that test in L.A. Print X. Exactly, Your Honor. The court recited the test, but it wasn't actually applied there because the court found that the error would not have resulted in refusal of registration by the Copyright Office. And the court also found that they hadn't satisfied the first prong, which is that there was a knowing inaccuracy. I think even before the Pro-IP Act, the courts have consistently, the Ninth Circuit has consistently held that fraud is only required to be shown where there is an immaterial error. But where there's a material error, where that error goes to the basic registrability of the work, then there's no fraud requirement. And in this case, even if the court were to require fraud, it could not be a subjective fraud standard. It must be a good-faith standard, just as the court stated in Unicolors. There has to be a reasonable basis for a plaintiff to believe that he was correctly applying the law. And here there's no such basis. Well, they're arguing that we should look at this more as a specific intent standard and disagree with the district court saying that you only need to know the underlying facts. So they included inaccurate information in the sense that that design had been published. But the question whether what they did with it, the sale of 190 yards, constitute publication or not, does seem to be an abstruse question of copyright law. And so why isn't copyright law like tax law, where you really can't hold someone to knowing what all those legal requirements are? Well, first of all, this is not your average plaintiff who writes perhaps one memoir and calls it a day. This plaintiff is a design company. That's what they do. They create designs, according to plaintiff. And it was their, I believe it was the vice president of the company who certified this application. When he certified it, he certified, and that's admitted in the record, that none of the works in the collection were published. And so, besides which, the law here is crystal clear. The regulation is clear that only unpublished works can be included in an unpublished collection. LA PrintEx makes that clear. But they argue still that it wasn't published. They're saying maybe it fits into this limited sale exception, and they point to the warning label that was put on it. So there's a lot of different arguments that they raise, that it wasn't published. And then they said that even if it was published, that's a very technical determination of law. So to the point of the warning and limited publication. So limited publication is only applicable under the 1909 Copyright Act, not under the 1976 Copyright Act. Because under the 1976 Copyright Act, there's no forfeiture of copyright for failure to include a notice of publication on first publication. So the whole limited publication standard is really inapplicable here. Secondly, these were not just plain distributions. These were sales. This goes to the black letter definition of publication under 17 U.S.C. 101, which is that publication is distribution by sale. According to the invoices, the plaintiff transferred ownership of fabric bearing the design in exchange for money. This could not possibly qualify for limited publication. And as for the so-called warning, the warning appears not only on what plaintiff is calling sample sales, but it also appears on invoices for what they call production or bulk sales. So they make no distinction, and clearly production or bulk sales in the thousands of yards of fabric are meant to be, when they're sold to garment manufacturers, meant to be made into garments and then resold. So clearly there's no limitation on the distribution or resale of that fabric. So even if you read the clear language of the warning, it never says that you can't distribute the work. It's merely a copyright notice. What happens is there in the record that the Fiesta did not know that the information was inaccurate? Well, Your Honor, the plaintiff admitted that he knew at the time that he filed the application that the design at issue, the 1461 design, had been sold to customers. Plaintiff certified to the Copyright Office that none of the designs in the collection were published. And your position is that's enough and there's no other contravening evidence? If there were to be contravening evidence of some good faith belief or reasonable belief, then that would have to come from plaintiffs. And plaintiffs didn't carry that burden. What they said in the affidavit was that they knew that the collection could not be registered as a published collection under prong A of 37 CFR 202.3B2D4.1. So they knew that it did not fit within prong A and therefore did not register it as a published collection. But they never said that they didn't know that it couldn't be published under prong B. And besides which, Your Honors, it would be absurd and would render section A superfluous if the court were to hold that under section B, a collection of both published and unpublished works could be registered as an unpublished collection merely based on the fact that they were never published as a collection. It would basically eviscerate the copyright regime. There's no case supporting that argument, is there? None whatsoever. In fact, L.A. Print Tax holds that a group of unpublished works may be registered as a single work. It doesn't say a group of published and unpublished works may be registered. So I think that argument is really a non-starter. And, again, as to what other courts have held, to the extent that courts in the Second Circuit, really so far only courts at the district level in the Southern District of New York, have imposed some kind of fraud requirements. That is not the – it's not in keeping with any of the holdings in the Ninth Circuit, and that should not be the law in the Ninth Circuit. We also think the Roberts case in the Eleventh Circuit is also not on point because it doesn't deal with a collective registration. And as such, it doesn't go to the registrability of the collection of the work. It just deals with whether or not a correct date was included in a single work registration. So that case also is clearly distinguishable. We think that an error such as the one here, which is fatal to the registration, not just any error but one that's fatal to the registrability of a work, is not a technical error. Congress didn't intend for ownership of a valid registration to be considered a mere technicality. In fact, courts have repeatedly held, the Ninth Circuit and even the Supreme Court, that ownership of a valid registration is, in fact, a prerequisite or essential element to plaintiff's claim. Plaintiff didn't sustain its burden. Also, to the extent that the Compendium 3, you know, the different versions of the Compendium, the Copyright Office made clear that the law hadn't changed between Compendium 2 and Compendium 3, and so it did not matter that Compendium 3 had not been published at the time that this application was filed because the law was the same under Compendium 2. And finally, again, there were no other registrations at issue here, so the only registration that was ever put at issue was the 509 registration, and given that that registration is invalid, plaintiff cannot support an infringement claim, and the district court properly dismissed the claim. Okay, thank you, and thank you for your argument. I would like to start by responding to Judge O'Scanlan's question in regard to where in the evidentiary record there's evidence. At evidentiary records 623 and 624, there's testimony under oath from the principal, Fiesta, that he did not consider sampling to be publication at the time. So he knew that there had been sampling, that they had sold these yards of material. Is that disputed? Well, during his deposition, they showed him the records and said, do you know this? And he said, okay, yes. It's very, it's two to three lines in the deposition, and for summary judgment. That might be just enough. Well, maybe, but this court found in Freedmen v. Live Nation that looking at things like subjective state of mind at the summary judgment stage is highly disfavored, and it has to be extremely conclusive. But so the record says, the ER 623 to 624 says, I didn't know what that meant. I didn't know that constituted publication. So it's really going to the legal issue. Is that correct? That's correct. He testifies that at the time they didn't think that giving out samples were publication. That's not how they did these registrations at their office. And there's no evidence that that was fraudulent. If they would have done it the way that sanctuary urges, they would have saved $70. There's really no basis and no reason as to why they would make this mistake on purpose. You said giving out samples. I thought the evidence was they sold the samples. They charge a de minimis, a dollar per, just for the cost of actually printing it up. There's no profits that are made. That sounds like a sale. Well, if it covers the goods, the cost of the good, it's more like they're asking for a copy of it, and they're willing to pay for whatever it costs to print that up. And there's just two issues that aren't responded to in the papers or in oral argument. The first is which is materiality. We argue that the error has to go to something that's material, that rebutts the client's prima facie case. They did not respond to that. They said there's no Ninth Circuit authority. But in United Fabrics v. C&J Ware, which we cite throughout our briefs, that's exactly what the court held. If you want to challenge an error in the registration, it has to go to the plaintiff's prima facie case, which is showing ownership, originality, and copying. There's no response to that. But the statute just says the materiality is the Copyright Office would not register it. I mean, doesn't that make it material? That's how it is in the statute. But that dovetails back into my prior point, which is why will a Copyright Office not register a work? Because it's either not original or you didn't author it. We're talking about the work at issue. We're not talking about a particular application. Nimmer says that in his treatise. The case law says that through L.A. Print-Ex, C&J Ware, Jules Jordan. If there's an issue as to the authorship or originality, and that's challenged via the registration, that is sufficient. Things like publication, derivative works, even the name of the author, the courts have found, is insufficient. And it makes sense when you look at the next step as laid out in the United Fabrics case, which is should they be able to carry both burdens, show a knowing misrepresentation, and show materiality, that it would have been something on which the Copyright Office would have rejected the work. All that happens at that point is the burden shifts back to the plaintiff. It negates that presumption the plaintiff gets from the registration. And at that point, the plaintiff is still allowed to put an author on the stand and say I created this, put an author on the stand and say the company owns it. And when you look at that in connection with the first element, there's no, there'd be nothing to do after that burden shifted back to the plaintiff if the issue is publication. Because when you go to trial, there's no burden of proof for publication at trial. It's simply not part of the case. So if you look at the two-step burden shifting in United Fabrics, they have to prove that materiality. And if they do, it shifts back to the plaintiff to prove originality without the presumption. You're over time. Thank you, Your Honor. Thanks. We appreciate your argument. The case of Gold Value International Textile v. Sanctuary Clothing is submitted, and the court for this session stands adjourned. All rise.
judges: O'scannlain, Ikuta, Steeh